| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------X<br>　<br>UNITED STATES OF AMERICA<br>　<br>　- v. -<br>　<br>DERRICK MORGAN,<br>　<br>　　　　　　　　　　　　Defendant.<br>------------------------------------------------------------------X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: 10/12/2017<br>　<br>17 Cr. 354 (KBF)<br>　<br>MEMORANDUM<br>DECISION & ORDER |

KATHERINE B. FORREST, United States District Judge:

On June 5, 2017, Derrick Morgan was indicted for narcotics possession with the intent to distribute, in violation of 21 U.S.C. § 841(b)(1)(C), possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1)-(2).  (ECF No. 7.)  The charges arise from an arrest that occurred as part of a traffic stop.  Before the Court is defendant's Motion to Suppress the drugs and weapons that he asserts were seized in violation of his rights under the Fourth Amendment.

Because there were contested issues of fact—in particular, whether the officers had probable cause or reasonable suspicion to stop defendant's vehicle and whether the drugs that police recovered that led to his arrest were in "plain view" during the stop—the Court held an evidentiary hearing on October 6, 2017.

For the reasons set forth below, the Court DENIES the motion.

I. FACTS[1]

A. <u>The Traffic Stop</u>

Officers Randy Henriquez and Malik McCloud testified at the hearing on October 6, 2017, as did the defendant.[2]

On the night of April 19, 2016, defendant was driving his white Dodge Charger (the "Charger") eastbound on 156th Street in the Bronx. (Suppression Hr'g Tr. "Tr." 59.) Officers Henriquez and McCloud, along with two other officers, were driving northbound on Courtland Avenue. (Tr. 9.) Officer Henriquez testified that he noticed that defendant's car had excessively tinted windows, and so effected a stop at the intersection of 156th Street and Melrose Avenue.[3] (Tr. 12, 60.)

After defendant pulled over, all four officers exited their vehicle. (Tr. 14-15.) Henriquez could not see the driver through the tinted windows, but verbally instructed him to roll them down. (Tr. 13, 60-61.) The defendant was the driver; he complied with the instructions and opened at least the front two windows. (Tr. 14, 61.) Henriquez asked defendant for his license and registration; after several requests, the defendant provided the information. (Tr. 15, 61.)

---

[1] The Court makes its findings of facts upon a preponderance of evidence.

[2] The Court found Officer Henriquez credible and relies on his testimony. The Court does not rely on Officer McCloud's testimony, as McCloud did not remember the event with sufficient clarity to provide useful information.

[3] Officer Henriquez testified that he had been involved in hundreds of car stops for tinted windows. (Tr. 5-6.) He further testified that, even at night, he identifies whether a car's windows are illegally tinted based upon his ability to see the motorist and the amount of street lighting that can pass through the windows. (<u>Id.</u>) He testified that, based on his experience, he viewed the tint on the defendant's car as exceeding the legal limit. (Tr. 11-13.)

2

The Government and defendant disagree about what occurred next. According to the Government, Henriquez immediately noticed a bag sitting on the front passenger seat, containing what, based on his training and appearance, appeared to be crack cocaine. (Tr. 16.) Henriquez testified that he made eye contact with Officer McCloud, who was standing at the open passenger window, and that McCloud subsequently reached in and took the bag off of the seat. (Tr. 16-19.) Henriquez then ordered defendant out of the car. (Id.) At the hearing, Henriquez further described the bag of drugs as appearing to contain "other small little bags inside of it." (Tr. 26.)

For his part, the defendant has taken two inconsistent positions as to the precise location of the drugs: first, in a signed declaration submitted in advance of the hearing, that they were "hidden beneath personal items" in the glove compartment (ECF No. 19, Defendant's Declaration ("Def.'s Decl.") ¶3); then, at the hearing, he testified that the single bag of cocaine—not crack—was in his eye glasses case, which he claims was in his glove compartment. (Tr. 62-64.) In both versions, the drugs were not in plain view.

In addition, it appeared to the Court that the defendant went out of his way to testify that the bag containing drugs did not contain other, smaller baggies. (Tr. 64.) According to the defendant, he was ordered out of the car by Henriquez after giving his license and registration; only then did the other three officers begin searching the car, recovering the bag of drugs. (Tr. 61-63.)

3

Following the hearing, the Court determined that resolution of whether the bag contained both drugs and baggies would be helpful to its determination of the disputed factual issues as well as of the witnesses' credibility. On October 6, 2017, the Court issued an Order making two requests. First, the Court ordered the Government to submit the voucher listing the items recovered from the car at the scene, and second, the Court asked for an opportunity to review the physical evidence itself. (ECF No. 24.)

On October 10, 2017, the Court held a brief hearing.[4] It asked both sides whether there were any objections to reopening the factual record and receiving the two items mentioned; both stated there were not. Both the voucher[5] and the physical evidence collected from the scene confirms the Government's version of events: in addition to the bag of cocaine, there was one small clear "Apple" brand zip lock bag, about 1" x 2", as well as two smaller clear bags.[6] This is precisely what defendant testified was <u>not</u> in the bag and what Officer Henriquez testified <u>was</u>. No glasses case was vouchered, recovered, or offered into evidence by the defendant.

The defendant was arrested at the scene.[7] The vehicle was driven to the station and subjected to an inventory search, which yielded no further contraband.

---

[4] The defendant was not present; his counsel stated on the record that the defendant waived his appearance.
[5] The voucher refers to more than one bag and references the additional "Apple" bag.
[6] The smaller baggies appear to be for packaging narcotics for resale.
[7] There is some confusion as to how this occurred—Officer Henriquez testifies that he arrested defendant (Tr. 30) as does defendant (Tr. 64). However, the Arrest Report lists Officer McCloud as the arresting officer (ECF No. 25, Ex. A) and McCloud testified to the same (Tr. 56).

(Complaint ("Compl.") ¶ 6(b)(iii).) On April 22, 2016, the police laboratory confirmed that the white, powdery substance recovered was cocaine. (Id. ¶ 9.)

B. The Search Warrant

On May 4, 2016, federal law enforcement agents conducted a proffer with a confidential informant ("CI") on an unrelated matter. (Gov't's Mem. of Law in Opposition ("Gov't's Mem. of Law"), Ex. B., ECF No. 21-2, ¶ 8.) During the proffer, the CI volunteered information relevant to this case. (Id.) In sum, he stated that he was aware of defendant's arrest and the charges brought against him, could identify the Charger as defendant's vehicle, and successfully identified a photograph of defendant. (Id.) The CI then stated that defendant's vehicle had a hidden, electronic compartment (the "Trap") located behind the glove compartment in which defendant kept approximately three handguns. (Id.) He explained that defendant had given him this information shortly after being arrested, afraid that the Government might discover the firearms before defendant was able to retrieve his car from police custody. (Id.)

On May 20, 2016, the Government obtained a search warrant for the Charger. (Gov't's Mem. of Law, Ex. B.) Its application was supported by an affidavit that was itself based, in large part, upon the proffer with the informant. (Id.) The warrant, signed by Magistrate Judge Barbara C. Moses, authorized law enforcement to search the vehicle and all locked, closed, and hidden containers and compartments therein for firearms. (Compl. ¶ 7; Gov't's Mem. of Law, Ex. B.) Upon executing the search warrant, the agents discovered: 1) a .40-caliber Glock model 23

5

semi-automatic handgun, loaded with approximately 12 live cartridges; 2) a .22-caliber RG Industries model RG14 revolver loaded with six live cartridges, and 3) a digital scale with white residue. (Compl. ¶ 8; Gov'ts Mem. of Law at 5.)

On June 9, 2016, a warrant was issued for defendant's arrest. (ECF No. 2). He was not, however, arrested until May 2017. (ECF No. 4.)

II.  LEGAL PRINCIPLES

A.  Burden of Proof

The burden of production and persuasion generally rest upon the movant in a suppression hearing. United States v. Arboleda, 633 F.2d 985, 989 (2d Cir. 1980). "The movant can shift the burden of persuasion to the Government and require it to justify its search, however, when the search [is] conducted without a warrant." Id. At a suppression hearing, the burden must be met by "no greater burden than proof by a preponderance of the evidence." United States v. Matlock, 415 U.S. 164, 177 n.14 (1974).

B.  Exclusionary Rule

The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. Davis v. United States, 564 U.S. 229, 236 (2011). If a court concludes that a search or seizure violated the Fourth Amendment, it must determine whether to suppress the evidence obtained as a result of that illegal search or seizure. See Mapp v. Ohio, 367 U.S. 643 (1961).

The exclusionary rule is a "deterrent sanction," Davis, 564 U.S. at 231-32, and "encompasses both the 'primary evidence obtained as a direct result of an illegal search or seizure' and . . . 'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree.'" Utah v. Strieff, 136 S. Ct. 2056, 2061 (2016) (quoting Segura v. United States, 468 U.S. 796, 804 (1984)).  Because the exclusionary rule is a "prudential" doctrine, see Davis, 564 U.S. at 236, it is "applicable only . . . where its deterrence benefits outweigh its substantial social costs," as "suppression of evidence . . . has always been our last resort, not our first impulse." Strieff, 136 S. Ct. at 2061 (quoting Hudson v. Michigan, 547 U.S. 586, 591 (2006)).

C. Traffic Stops for Tinted Windows

The temporary detention of an individual during a traffic or "Terry" stop is subject to limitation under the Fourth Amendment as a "seizure" of that person. Terry v. Ohio, 392 U.S. 1 (1968); Holeman v. City of New London, 425 F.3d 184, 189 (2d Cir. 2005) (citing Whren v. United States, 517 U.S. 806, 809-10 (1996)).  "The Fourth Amendment requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." Holeman, 425 F.3d at 189.  "Whether probable cause or reasonable suspicion exists is an objective inquiry; the 'actual motivations of the individual officers involved' in the stop 'play no role' in the analysis." Id. at 190 (quoting Whren, 517 U.S. at 813).

7

Even minor traffic violations provide probable cause for an officer to stop a vehicle. United States v. Scopo, 19 F.3d 777, 782 (2d Cir. 1994). Driving a car with excessively tinted windows is illegal under New York Law. N.Y. Veh. & Traffic Law § 375(12-a)(b) ("No person shall operate any motor vehicle . . . [the] side windows of which on either side forward of or adjacent to the operator's seat are composed of, covered by, or treated with any material which has a light transmittance of less than seventy percent."). Such an infraction provides probable cause for an officer to make a traffic stop. See, e.g., United States v. Garcia, 279 F. Supp. 2d 294, 298 (S.D.N.Y. 2003) (finding that having excessively tinted windows was a traffic violation upon which "the officers legitimately could have based a traffic stop"); United States v. Ferguson, 130 F. Supp. 2d 560, 565 (S.D.N.Y. 2001) ("[C]ourts have found that a violation of New York's Vehicle and Traffic Law prohibiting the operation of vehicles with excessively tinted windows provides the police with probable cause or reasonable suspicion to stop a car."); Woods v. Candela, 921 F. Supp. 1140, 1144 (S.D.N.Y. 1996) (officer "was authorized to stop [driver] for excessively tinted windows").

Furthermore, if an objectively reasonable police officer would have suspected that the windows were tinted in violation of New York law, probable cause can be found, regardless of the individual officer's behavior or beliefs. United States v. Harrell, 268 F.3d 141, 149 (2d Cir. 2001) (finding that although the officer did not "observe" a tinted-window violation, probable cause nevertheless existed, as an "objectively reasonable" officer would have suspected them to be tinted); see also

Garcia, 279 F. Supp. at 299 (finding the fact that the officer in that case never tested the windows with a "tint meter" to be immaterial, as "only an objectively reasonable belief or suspicion of a violation, supported by articulable facts, is required").

D. The Plain View Doctrine

Searches without a warrant are generally deemed unreasonable under the Fourth Amendment, "subject to only a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). One such exception is the "plain view" exception. Illinois v. Andreas, 463 U.S. 765, 771 (1983). Under the plain view exception, a law enforcement officer may, without a warrant, seize evidence if: 1) the officers who seize such evidence have not violated the Fourth Amendment in arriving at the place in which the evidence is plainly viewed; 2) the incriminating nature of the evidence found is immediately apparent; and 3) the evidence is, in fact, in plain view. See Horton v. California, 496 U.S. 128, 136-37 (1990); see also Coolidge v. New Hampshire, 403 U.S. 443, 465-66 (1971).

E. Search Warrants

    i. Confidential Informants

A search warrant is valid where it rests on a finding that probable cause exists to believe that a crime has been committed and evidence or instrumentalities of the crime will be found in the place to be searched. United States v. Travisano, 724 F.2d 341, 346 (2d Cir. 1983). "A magistrate's determination of probable cause should be paid great deference by reviewing courts." Illinois v. Gates, 462 U.S. 213, 236 (1983) (internal quotations omitted). A reviewing court must "resolve any doubt about the

9

existence of probable cause in favor of upholding the warrant." United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998). Furthermore, an affidavit supporting a search warrant carries a "presumption of validity." Franks v. Delaware, 438 U.S. 154, 171 (1978).

In assessing probable cause based on information provided in whole or in part by a confidential informant, a Court should consider the informant's veracity, reliability, and basis of knowledge, as well as whether the information is independently corroborated. United States v. Gagnon, 373 F.3d 230, 235 (2d Cir. 2004) (citing Gates, 462 U.S. at 230). One factor in establishing reliability is whether the informant provides the information "face-to-face" or over the telephone; the former is thought to be more reliable because of "the greater risk that [the informant] may be held accountable if his information proves false." United States v. Steppello, 664 F.3d 359, 365 (2d Cir. 2011)

As a general rule, confidential informants are considered "less reliable than an innocent bystander with no apparent motivation to falsify." Id. However, where a "substantial amount" of information from the informant is independently corroborated, the Court may infer that that the informant is reliable and that other, uncorroborated information is also reliable. United States v. Wagner, 989 F.2d 69, 73 (2d Cir. 1993). Even where an informant has no proven record of "truthfulness or accuracy," if his declaration "is corroborated in material respects, the entire account may be credited." Id. In United States v. Canfield, 212 F.3d 713, 720 (2d Cir. 2000), for example, despite the fact that the confidential informant was unknown to the

10

police, he was found to be sufficiently reliable based on his ability to accurately identify the defendant's residence, his movement between residences, and his involvement in dealing narcotics.

Hearsay information can suffice to establish probable cause, so long as there is a "substantial basis for crediting the hearsay." United States v. Zucco, 694 F.2d 44, 46 (2d Cir. 1982). It is therefore permissible for a judge to consider hearsay, "including the hearsay statements of a confidential informant," in determining the existence of probable cause. United States v. Harding, 273 F. Supp. 2d 411, 418 (S.D.N.Y. 2003).

Finally, there is no requirement for the search warrant application to disclose an informant's criminal history. Indeed, "[p]robable cause can exist despite the omission of an informant's criminal history if that history does not bear upon the informant's veracity, and if the informant had first-hand knowledge that was corroborated in some way." United States v. Soto, 52 Fed. App'x 534, 535 (2d Cir. 2002).

    ii.    Overbreadth

The Fourth Amendment commands that "no warrants shall issue [unless] particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To prevent "wide-ranging exploratory searches," Maryland v. Garrison, 480 U.S. 79, 84 (1987), the warrant "must enable the executing officer to ascertain and identify with reasonable certainty those items that

the magistrate has authorized him to seize." United States v. George, 975 F.2d 72, 75 (2d Cir. 1992).

Specifically, a warrant must: 1) identify the specific offense for which the police have established probable cause; 2) describe the place to be searched; and 3) specify the items to be seized by their relation to designated crimes. United States v. Galpin, 720 F.3d 436, 445-46 (2d Cir. 2013).

III. DISCUSSION

Defendant makes three assertions under the Fourth Amendment: 1) that his vehicle was stopped without probable cause or reasonable suspicion; 2) that the drugs confiscated from his vehicle were seized without a warrant or probable cause; and 3) that the search warrant leading to the discovery of his weapons was both overbroad and issued without probable cause. The Court will discuss each of defendant's claims in turn.

    A. The Vehicle Stop

Defendant asserts that his vehicle was stopped illegally, claiming "[t]o the best of my knowledge, my windows are not illegally tinted" and furthermore that "the lighting conditions were so poor at the time of the stop that there is no way the police could possibly assess the degree of tint on my windows." (Def.'s Decl. ¶ 2.) The Government maintains the officers were justified in stopping the vehicle. The Court agrees with the Government.

In light of the evidentiary hearing, there is no serious question of fact as to whether defendant's windows were tinted. Defendant concedes that they were tinted. (Tr. 65.) He offered no evidence that the level of tint was within legal limits. In contrast, based on his training and experience, Officer Henriquez testified to his belief that they were unlawfully tinted, based on the fact that he was "not able to see the motorist inside the car." (Tr. 11-12.) Objective evidence confirms that the car windows appear to be darkly tinted. (Gov't Mem. of Law, Ex. A.)

Even if evidence were offered that his windows were not illegally tinted—which it has not been—this Court would still find that the officer had probable cause to stop the defendant's vehicle based on his observation that the windows <u>appeared</u> to be illegally tinted. At the very least, there were articulable facts in support of a reasonable suspicion. In light of the objective evidence, the defendant's testimony, and the subjective beliefs of the officers, it is beyond controversy that an "objectively reasonable officer" might have suspected the windows were tinted. <u>Harrell</u>, 268 F.3d at 149. This is all that the law requires.

As such, the Court finds that the traffic stop was permissible and did not violate defendant's Fourth Amendment rights.

### B. <u>Seizure of the Bag with Cocaine</u>

Defendant next asserts that his vehicle was searched with neither probable cause nor a warrant. For its part, the Government alleges that the drugs recovered on April 19, 2016 were in plain view, and therefore fall under the "plain view" exception to the warrant requirement. Based upon the evidence offered at the

13

evidentiary hearing, the Court finds that the Government has met its burden and shown that the drugs were in plain view.

As discussed above, the plain view doctrine allows the seizure of evidence without a warrant under three conditions. Horton, 496 U.S. at 136-37. Here, all three conditions are met. First, as established above, the officers were engaged in a permissible traffic stop of defendant's vehicle when they first noticed the bag of cocaine, thus meeting the first prong. Second, Officer Henriquez testified that he was immediately aware of the nature of the contraband, based on his training and experience, describing it as "a white powdery substance inside a clear plastic bag that was twisted at the top with other small little bags inside of it." (Tr. 16-17, 26.)

As to the third prong, the parties disagree as to whether the drugs were in plain view. Defendant maintains that they were not; however, as discussed above, his story is inconsistent. In his signed declaration, he stated that the drugs were "hidden beneath personal items" (Def's Decl. ¶ 3), while on the stand he testified that the cocaine was inside of his glasses case (Tr. 63). In contrast, the Government has consistently maintained that the drugs were on the passenger seat. (Tr. 16-19, Gov't's Mem. of Law, Ex. B ¶ 7(a).)

The Court found Officer Henriquez to be the more credible witness. Defendant's testimony, on the other hand, was inconsistent both with his signed declaration and with the evidence collected. The Court therefore finds by a preponderance of evidence that the drugs were in plain view. Thus, defendant's motion to suppress the drugs found within the vehicle is DENIED.

14

C. <u>Search of the Vehicle</u>

Defendant's third assertion is that the search of his vehicle's hidden compartments and subsequent seizure of the guns were unreasonable in violation of the Fourth Amendment. He concedes that a warrant to search his vehicle was obtained. However, he contends that the search and seizure were still unconstitutional for three reasons: 1) the warrant application lacked probable cause; 2) the warrant was overbroad; and 3) the vehicle was, in fact, searched prior to the warrant being issued. The Court disagrees with all three assertions.

Defendant argues that the criminal informant did not have sufficient indicia of reliability, arguing that he was unknown to police, that his criminal history was not disclosed in the warrant application, and that his statements were based not on personal observation, but on hearsay, in the form of statements he claimed defendant made to him. The Court disagrees.

As stated above, none of defendant's arguments is fatal to a finding of probable cause—where there is substantial corroboration, the informant need not be known to police, nor does his criminal history have to be disclosed. <u>Gagnon</u>, 373 F.3d at 235; <u>Soto</u>, 52 Fed. App'x at 535. Here, the informant was known to police, gave the information in person, and it was substantially corroborated—he identified defendant, was able to describe his car, the amount of drugs he had with him at his arrest, the existence of the Trap, and the fact that defendant stored weapons inside of it. (Gov't's Mem. of Law, Ex. B ¶ 8.) Additionally, as discussed above, the fact that the application was based partially on hearsay is not fatal to a finding of

15

probable cause. Harding, 273 F. Supp. 2d at 419. As such, the Court finds that the Magistrate did not err in issuing the search warrant.

Defendant's also argues that the warrant, even if based in probable cause, is fatally overbroad. The Court finds no merit in this argument.

As discussed above, a warrant must identify the specific offense for which the police have established probable cause, the specific place to be searched, and the specific items to be seized in relationship to the designated crimes. Galpin, 720 F.3d at 445-46. Here, the warrant does all three; it specifically states the crimes for which there is probable cause (18 U.S.C. §§ 922(g) and 924(c), and 21 U.S.C. 841(a)(1)), and it states with specificity both the place (defendant's vehicle) and the items and their relationship to the crimes listed. (Gov't Mem. of Law, Ex. B.) That the defendant believes a more limited search of his glove compartment would have been adequate is immaterial.

Nor does this Court find any merit in defendant's unsubstantiated allegations that his car was in fact first searched without a warrant or that the informant is non-existent. Defendant does nothing more than assert that the Government search was "predicated upon a hunch . . . and [the informant] was an after the fact creation to justify the conduct that precipitated the discovery of these firearms." (Def.'s Motion to Suppress ¶ 27, ECF No. 18.)

Without "moving papers [that] are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question," the defendant has no entitlement to an

16

evidentiary hearing on this issue. United States v. Pena, 961 F.2d 333 (2d Cir. 1992) (internal quotations omitted).

For all the reasons stated above, defendant's Motion to Suppress the weapons found within the vehicle is DENIED.

IV. CONCLUSION

For the reasons set forth above, the motion to suppress is DENIED in its entirety. The Clerk of Court is directed to terminate the motion at ECF No. 18.

SO ORDERED.

Dated:   New York, New York
         October 12, 2017

_____
          KATHERINE B. FORREST
          United States District Judge